JANET M. HEROLD
Regional Solicitor
IAN H. ELIASOPH
Counsel for ERISA
CHERYL L. ADAMS
Senior Trial Attorney
UNITED STATES DEPARTMENT OF LABOR
90 7th Street, Suite 3-700
San Francisco, California  94103
Tel:  (415) 625-7759
Fax:  (415) 625-7772
Email:  Adams.Cheryl.L@dol.gov

Attorneys for R. Alexander Acosta, Secretary,
United States Department of Labor

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| **R. ALEXANDER ACOSTA**, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>**KIZZANG LLC**, a Nevada limited liability company; **ROBERT ALEXANDER**, an individual; **TOM LEE**, an individual; and **KIZZANG LLC HEALTH PLAN**, an employee benefit plan.<br><br>Defendants | Case No.: 2:18-cv-1559<br><br>**COMPLAINT**<br>Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1191c |

## JURISDICTION

1.      This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought by the Secretary under ERISA Sections 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), to enjoin acts and practices that violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA Section 409, 29 U.S.C. § 1109, and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

2.      This Court has jurisdiction over this action under ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.      Venue of this action lies in the District of Nevada under ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2) because the Kizzang LLC Health Plan was administered in Las Vegas, Nevada, within this district.

## DEFENDANTS

4.      At all relevant times, Kizzang LLC Health Plan (the "Plan") was an employee welfare benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA under ERISA § 4(a), 29 U.S.C. § 1003(a).[1]

5.      Defendant Kizzang LLC. ("Kizzang" or the "Company") ceased operating around May, 2017.  Kizzang was an online website for games and sweepstakes, headquartered in Las Vegas, Nevada. The Company established the Plan around 2013 and served as the Plan Administrator. At all relevant times, the Company exercised discretionary authority or control respecting the management and disposition of the Plan and its assets and exercised discretionary authority and responsibility in the administration of the Plan. The Company was therefore a fiduciary of the Plan within the meaning Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA Section 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A), (C).

6.      At all relevant times, Defendant Robert Alexander ("Alexander") was the President and majority owner of the Company and a resident of Las Vegas, Nevada. At all relevant times, Alexander exercised discretionary authority and control respecting the management and disposition of the Plan and its assets and exercised discretionary authority and responsibility in the administration of the Plan. Alexander was therefore a fiduciary of the Plan within the meaning of ERISA Sections 3(21)(A), 29 U.S.C. §§ 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA Sections 3(14)(A), (E) and (H), 29 U.S.C. §§ 1002(14)(A), (E) and (H).

7.      At all relevant times, Defendant Tom Lee ("Lee") was the Vice President of Operations of the Company and a resident of Las Vegas, Nevada. At all relevant times, Lee exercised discretionary authority and control respecting the management and disposition of the Plan and its assets and

---

[1] The Plan is named as a Defendant under Rule 19(a) of the Federal Rules of Civil Procedure, solely to ensure that complete relief can be granted.

exercised discretionary authority and responsibility in the administration of the Plan. Lee was therefore a fiduciary of the Plan within the meaning of ERISA Sections 3(21)(A), 29 U.S.C. §§ 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA Sections 3(14)(A), 29 U.S.C. §§ 1002(14)(A).

## FACTUAL ALLEGATIONS

8. Paragraphs 1 through 7 above are re-alleged and incorporated herein by reference.

9. The Plan was a fully insured health and welfare plan that was established by the Company around March 2013. The Plan offered its employees medical, dental, and vision coverage.

10. Beginning in or around September 2013, Rocky Mountain Hospital and Medical Service, Inc. *d/b/a* Anthem Blue Cross and Blue Shield ("Anthem") served as the Plan's medical insurance carrier. All full-time employees of the Company were eligible to enroll for coverage under Anthem's policy.

11. The Plan was funded by salary reduction contributions by employees and by employer contributions. The Company covered 100% of the premium for the lower-level medical policy. However, if a participant enrolled a dependent or decided to enroll in the higher-level medical policy, it was the participant's responsibility to pay the additional premium cost through payroll deductions.

12. The Company served as Plan Administrator and was also responsible for collecting and forwarding employee contributions withheld from participants' paychecks to the Plan and for satisfying the notice, disclosure, and other obligations placed on administrators by ERISA.

13. At all relevant times, Defendants Alexander and Lee were authorized signatories to the Company's bank account with the authority to transfer funds to and from this account. Among other duties, Alexander and Lee directed the finances of the Company, including the disposition of Plan assets, and were the signatories on checks sent on the Company's behalf to pay the Plan's insurance premiums to Anthem. Defendant Lee signed the Plan Enrollment Application as "Decision Maker" and "Group Administrator." Defendant Lee reported to Alexander, the President, and jointly made decisions regarding the Plan. Both Alexander and Lee signed checks on the Company's behalf to pay the Plan's insurance premiums to Anthem.

**Kizzang, Alexander, and Lee failed to forward withheld employee contributions to the Plan and to collect the employer contributions owed to the Plan.**

14. Paragraphs 1 through 13 above are re-alleged and incorporated herein by reference.

15. Between from at least November 13, 2015 to November 15, 2016, Kizzang, Alexander, and Lee engaged in a practice where they withheld employee contributions totaling not less than $19,762.11 from Plan participants' paychecks but failed to forward these amounts to the Plan. The employee contributions were reasonably segregable from the Company's assets in thirty (30) days.

16. Instead of remitting these withheld employee contributions to the Plan, Kizzang, Alexander, and Lee retained and commingled these Plan assets within the Company's general banking accounts so these amounts could be used for non-Plan purposes.

17. Between from at least November 13, 2015 to November 15, 2016, Kizzang, Alexander, and Lee failed to take steps to collect on the Plan's behalf the health insurance premiums owed by the Company to the Plan. The Company had sufficient liquid assets during the relevant period to pay the employer contributions owed to the Plan.

18. As a result of Kizzang, Alexander, and Lee's failure to remit employee contributions and collect employer contributions as set forth in paragraph 15 to 17 above, the Plan failed to pay the premiums that were due and owing to Anthem under the insurance contract.

**Kizzang, Alexander, and Lee failed to warn participants that their medical insurance was subject to retroactive cancellation because the fiduciaries had failed to pay the required premiums or could not guarantee future payments would be paid.**

19. Paragraphs 1 through 18 above are re-alleged and incorporated herein by reference.

20. During the period from at least November 13, 2015 to November 15, 2016, the Company failed to pay the monthly medical insurance premiums due to Anthem to ensure that Plan participants maintained their insurance coverage. As a result, on or about March 11, 2016, Anthem cancelled the participants' medical insurance coverage with a retroactive cancelation date of November 1, 2015.

21. Because Kizzang, Alexander, and Lee never instructed participants' that their health care insurance was at risk of being terminated retroactively, and, after March 11, 2016, was in fact

Complaint for violations of ERISA—Labor

4

1  terminated retroactively going back to November 1, 2015, participants continued to seek medical
2  services as usual through September 21, 2016, based on their reasonable belief that the services would
3  be covered. As a result, claims that would have been eligible for coverage under the terms of the Plan's
4  agreement with Anthem were denied without adjudication or were approved and then retroactively
5  denied.

6        22.    Because Kizzang, Alexander and Lee continued to withhold employee contributions
7  from participant's pay for the period from November 13, 2015 to November 15, 2016, participants and
8  beneficiaries reasonably believed they continued to be covered by the insurance they had enrolled in.

9        23.    As a result of Kizzang, Alexander, and Lee's failure to warn participants during the
10 period from November 1, 2015, through March 11, 2016, that premiums were unpaid and that the
11 premiums might continue to go unpaid resulting in retroactive cancellation of the insurance,
12 participants and beneficiaries reasonably believed that they continued to be covered during this period.

13       24.    As a result of Kizzang, Alexander, and Lee's failure to notify all participants and
14 beneficiaries that the medical insurance benefits had been retroactively terminated on March 11, 2016,
15 with a retroactive date of November 1, 2015, and there was no longer coverage, participants and
16 beneficiaries continued to seek covered benefits under the belief that the coverage remained in place.

17       25.    As a result of the failures to warn and notify participants as described in Paragraphs 23
18 and 24 above, the participants and beneficiaries were billed at least $83,689.07 for uncovered medical
19 services due solely to the fact that they lacked insurance coverage because the fiduciaries failed to pay
20 the required premiums.

21       26.    Further, because participants were never notified that their health care insurance was
22 terminated until at least three months <u>after</u> the termination date, they were unable to timely obtain
23 minimum essential coverage to avoid paying an individual shared responsibility payment under the
24 Affordable Care Act. Participants were also unable to take advantage of the special enrollment
25 provisions in alternate health care insurance policies because they were notified of the termination of
26 their health care insurance policy more than 60 after the qualifying event.

### **VIOLATIONS OF ERISA**

28       27.    By the conduct described in paragraphs 9 through 18 above, Defendants Kizzang,

Alexander, and Lee, acting in their fiduciary capacities:

(a) Failed to hold Plan assets for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1);

(b) Failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Plan administration, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

(c) Failed to act with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

(d) Caused the Plan to engage in transactions which they knew or should have known constituted a direct or indirect lending of money or other extension of credit between the Plan and a party in interest, in violation of ERISA Section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B);

(e) Caused the Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

(f) Dealt with assets of the Plan in their own interests and acted on behalf of a party whose interests are adverse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA Sections 406(b)(1) and (2), 29 U.S.C. § 1106(b)(1) and (2);

28. By the conduct described in paragraphs 20 to 26 above, Defendants Kizzang, Alexander, and Lee, acting in their fiduciary capacities:

(a) Failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Plan administration, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

(b) Failed to act with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

29. As a direct and proximate result of the breaches of fiduciary duties committed by the Defendants Kizzang, Alexander, and Lee, as described in paragraphs 9 through 26 above, the Plan has suffered losses for which Defendants are jointly and severally liable under ERISA Section 409, 29 U.S.C. § 1109.

30. As a direct and proximate result of the breaches of fiduciary duties committed by the Defendants Kizzang, Alexander, and Lee, as described in paragraphs 9 through 26 above, the Plan has suffered harm in the form of uncovered medical claims and ACA fees for its participants for which Kizzang, Alexander, and Lee are jointly and severally liable.

31. Kizzang is liable as a co-fiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a), for the violations alleged above because: (1) it knowingly participated in, or knowingly undertook to conceal, acts or omissions, of the other Defendants; (2) it enabled the other Defendants to commit the breaches by its failure to comply with ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B), in administering its responsibilities which gave rise to its status as a fiduciary; or (3) it had knowledge of the other Defendants' breaches and failed to make reasonable efforts under the circumstances to remedy those breaches.

32. Alexander is liable as a co-fiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a), for the violations alleged above because: (1) he knowingly participated in, or knowingly undertook to conceal, acts or omissions, of the other Defendants; (2) he enabled the other Defendants to commit the breaches by his failure to comply with ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B), in administering his responsibilities which gave rise to his status as a fiduciary; or (3) he had knowledge of the other Defendants' breaches and failed to make reasonable efforts under the circumstances to remedy those breaches.

33. Lee is liable as a co-fiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a), for the violations alleged above because: (1) he knowingly participated in, or knowingly undertook to conceal,

acts or omissions, of the other Defendants; (2) he enabled the other Defendants to commit the breaches by her failure to comply with ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B), in administering his responsibilities which gave rise to his status as a fiduciary; or (3) he had knowledge of the other Defendants' breaches and failed to make reasonable efforts under the circumstances to remedy those breaches.

34. As a direct and proximate result of the breaches and violations set forth above, the Secretary is entitled to such equitable or remedial relief as the Court may deem appropriate, including restoration of all Plan losses, under ERISA §§ 409 and 502(a)(2), 29 U.S.C. § 1109 and § 1132(a)(2), and payment of Plan participants' uncovered medical claims during participants' period of lapsed coverage resulting from Kizzang, Alexander, and Lee's fiduciary breaches, under ERISA §502(a)(5), 29 U.S.C. §§ 1132(a)(5).

**PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays for judgment:

A. Ordering Kizzang, Alexander, and Lee to restore to the Plan any losses resulting from fiduciary breaches committed by them or for which they are liable;

B. Ordering Kizzang, Alexander, and Lee to correct the prohibited transactions in which they engaged or in which they caused the Plan to engage;

C. Permanently enjoining Kizzang, Alexander, and Lee from violating the provisions of Title I of ERISA;

D. Removing Kizzang, Alexander, and Lee as fiduciaries to the Plan;

E. Permanently enjoining Alexander and Lee from serving as a fiduciary to any ERISA covered plans;

F. Ordering Kizzang, Alexander, and Lee to pay all uncovered medical claims and ACA penalties incurred by Plan participants as a result of the aforementioned fiduciary breaches;

G. If necessary, appointing an independent fiduciary to distribute recovered amounts to Plan participants;

H. Awarding the Secretary the costs of pursuing this action; and

I. Ordering such further relief as the Court deems to be appropriate and just.

Dated: August 17, 2018

KATE S. O'SCANNLAIN
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

IAN H. ELIASOPH
Counsel for ERISA

*/s/ Cheryl L. Adams*
Cheryl L. Adams
Senior Trial Attorney
Attorneys for Plaintiff Secretary of Labor

Complaint for violations of ERISA—Labor